O

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMBRACEABLE YOU DESIGNS, INC., <br><br>                    Plaintiff, <br><br>        v. <br><br> FIRST FIDELITY GROUP, LTD.; FIRST FIDELITY ASSET GROUP, LLC; LYNN DALE BOGART; SIMON SHAW; MICHELLE DALTON; and M DALTON FASHIONS, INC., <br><br>                    Defendants. | Case No. 2:09-cv-03271-ODW(FFM) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [96]** |

## I.    INTRODUCTION

Plaintiff Embraceable You Designs, Inc. moves for summary judgment against Defendants First Fidelity Group, Ltd. ("First Fidelity"); First Fidelity Asset Group, LLC ("Asset Group"); Lynn Dale Bogart; Simon Shaw; Michelle Dalton; and M Dalton Fashions, Inc. ("Fashions").  (ECF No. 96.)  Defendants failed to oppose this motion, which the Court may deem as consent to ruling in favor of Embraceable You. Local R. 7-12.  Nevertheless, the Court has considered the merits of Embraceable

/ / /

You's motion and, for the reasons discussed below, **GRANTS in PART** and **DENIES in PART** Embraceable You's motion for summary judgment.[1]

## II.   FACTUAL BACKGROUND

Plaintiff Embraceable You is a California corporation owned by Jenny Von Holtermann that manufactured and sold women's and children's clothing.  (FAC ¶ 5; Mot. 2.)  Defendant First Fidelity is a private equity fund previously registered in the British Virgin Islands.  (SUF 2.)  It has its principal place of business in London, England, and it also has California offices in Beverly Hills and Newport Beach.  (FAC ¶ 6.)  Defendant Simon Shaw is First Fidelity's managing director.  (SUF 3.)  Defendant Asset Group is a Nevada limited liability company affiliated with First Fidelity whose manager is Defendant Lynn Dale Bogart.  (*Id.*)  Bogart, also known as Joseph Lekar,[2] is a felon convicted of aiding and abetting wire fraud and money laundering.  (SUF 1.)  Defendant Michelle Dalton is the President of fellow Defendant Fashions, a California corporation.  (FAC ¶ 9.)

In November 2007, Von Holtermann put Embraceable You up for sale to finance her son's college education.  (Mot. 2.)  In January 2008, Dalton agreed to purchase Embraceable You's business assets, specifically the "TULULA, UNDER TEE brand trademark" and the company's goodwill, customer lists, office furniture, office equipment, office supplies, and warehouses.  (Von Holtermann Decl. Ex. E, at 37.)  Dalton offered to pay for these tangible and intangible assets with two First Fidelity bonds.  (*Id.* ¶ 3.)  The first bond was set to mature on January 15, 2010; the second was set to mature on January 30, 2010.  (*Id.*)

Because Von Holtermann had never owned securities before, she asked Dalton to send her a copy of the bonds.  (*Id.* ¶¶ 4–5.)  Dalton sent Von Holtermann a copy of

---

[1] Having considered the papers filed in support of Embraceable You's motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

[2] Bogart was originally sued as Joseph Lekar, but Embraceable You requested that this Court substitute Bogart's legal name for his assumed name in all papers.  (ECF No. 99.)  The Court granted this request on November 19, 2012, and uses Bogart's legal name throughout this opinion. (ECF No. 101.)

the front page of the bonds and a letter from Shaw that stated the bonds were transferable. (SUF 11.) Dalton, who represented First Fidelity along with Bogart,[3] also told Von Holtermann that the bonds could be redeemed prior to maturity. (SUF 12; Mot. 2.) But Dalton and Bogart did not inform Von Holtermann that First Fidelity was no longer a valid private equity fund. (SUF 12.) As of November 1, 2007, First Fidelity had been stricken off the British Virgin Islands' register of corporations for nonpayment of funds, and as of July 30, 2008, it was in a state of receivership. (SUF 2.) Likewise, no one revealed to Von Holtermann that on December 5, 2007, the California Corporations Commissioner had ordered Asset Group to desist and refrain from offering or selling securities in the state. (SUF 3; Mot. 6.)

Bogart shipped the bonds to Von Holtermann, but when she received them on February 18, 2008, she saw the language on the back of the bonds for the first time indicating that the bonds were not registered under any securities act and could not be redeemed prior to their maturity date. (FAC ¶¶ 26–29; Von Holtermann Decl. ¶ 8.) When Von Holtermann questioned Dalton and Bogart about these restrictions, Dalton reassured Von Holtermann that she could redeem the bonds at any time. (SUF 16.) Von Holtermann relied on this statement and proceeded to close the deal on the sale of Embraceable You's business assets to Dalton, especially since Dalton also agreed to purchase Embraceable You's inventory "as needed in [the] future" and assume its showroom lease. (Von Holtermann Decl. ¶¶ 10–11 & Ex. E, at 39.)

After closing the deal in mid-February 2008, Dalton picked up Embraceable You's assets and inventory but did not reimburse the company for its inventory and refused to assume its lease. (Id. ¶ 12; Mot. 5.) Instead, Dalton sought rescission of the Embraceable You sale and alleged that Von Holtermann had caused her damages via failure of consideration and fraudulent and negligent misrepresentation. (Von

---

[3] Both Dalton and Bogart were joint signatories on Asset Group's checking account. (Warwick Decl. ¶ 7 & Ex. F.) Dalton also identified herself as a member of First Fidelity's advisory board. (Monroe Decl. ¶ 2 & Ex. A.)

1    Holtermann Decl. Ex. E, at 39.)

2        As a result of this dispute, the parties commenced an arbitration proceeding.

3    (*Id.* ¶ 19.)  One of the issues discussed was Embraceable You's inventory.  (*Id.* Ex. E,

4    at 39–40.)  Von Holtermann alleged that she sold the inventory to Dalton, while the

5    arbitrator found that Dalton had attempted to return all the clothing and had placed it

6    in a storage facility for Von Holtermann to pick up.  (*Id.* Ex. E, at 40.)  No evidence

7    showed that Von Holtermann ever retrieved her property.  (*Id.*)

8        Because of Dalton's failure to pay for the inventory and assume Embraceable

9    You's lease, Von Holtermann tried to redeem her bonds on April 16, 2008.  (FAC

10   ¶ 32.)  First Fidelity refused this request twice:  once on June 30, 2008, and again on

11   October 10, 2008.  (*Id.* ¶¶ 32, 37.)  The reason for the latter denial was that First

12   Fidelity knew Dalton was seeking rescission of the Embraceable You sale.  (*Id.* ¶ 37

13   & Ex. 7.)  As such, First Fidelity believed "an actual pending dispute as to the rightful

14   owner of the bonds" existed between the two parties.  (*Id.* ¶ 37.)  Von Holtermann

15   also attempted to obtain payment of the interest due on the bonds on January 29, 2009,

16   but First Fidelity denied this request as well.  (*Id.* ¶¶ 38–39.)  First Fidelity's failure to

17   honor Von Holtermann's redemption of the now-matured bonds and pay interest

18   continues today.  (Mot. 3.)

19       Several procedural issues also transpired prior to the filing of this motion to

20   further complicate the matter.  On December 21, 2009, Dalton filed for bankruptcy in

21   the United States Bankruptcy Court for the Central District of California, Riverside

22   Branch.  (ECF No. 66.)  Afterward, Embraceable You moved for default judgment

23   against Bogart on January 5, 2010, because he failed to answer.  (ECF No. 74.)  On

24   March 5, 2010, the Court stayed the present case pending Dalton's bankruptcy petition

25   in Riverside.  (ECF No. 97.)  At the same time, the Court denied Embraceable You's

26   default judgment against Bogart without prejudice, deeming it premature because

27   liability as to the other Defendants had yet to be determined.  (ECF No. 80.)

28

By March 7, 2010, the Court had dismissed all Defendants but Dalton and Bogart.  (ECF No. 81–84.)  On March 11, 2010, the Court lifted the bankruptcy stay on the case, and Embraceable You attempted to ascertain Bogart's true identity.  (ECF No. 91.)  As of April 22, 2012, Embraceable You was unable to locate Bogart.  (ECF No. 92.)  After receiving an Order to Show Cause due to failures to file periodic status reports, Embraceable You filed the instant motion for summary judgment on October 22, 2012.  (ECF No. 96.)

### III.    LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

/ / /

## IV.   DISCUSSION

Embraceable You's First Amended Complaint asserts five claims:  (1) violation of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b); its related Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5; and section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), against all Defendants; (2) violation of section 25130 of the California Corporations Code against Dalton and Bogart; (3) violation of section 25401 of the California Corporations Code against all Defendants; (4) common-law fraud against Dalton and Bogart; and (5) common count for monies owed against Shaw, Bogart, and First Fidelity Group, Ltd.  (FAC ¶¶ 44–103.)  Since the Court dismissed all Defendants but Dalton and Bogart, we construe the current motion and all claims as against both Dalton and Bogart only.  (ECF No. 81–84.)  The Court first analyzes Embraceable You's Exchange Act claims, followed by its California Corporations Code claims. The Court then concludes by addressing Embraceable You's common-law and common-count claims.

### A.   Violations of the Securities Exchange Act of 1934

For Embraceable You to have valid claims under the Exchange Act, the bonds Dalton gave to Von Holtermann must qualify as securities in accordance with the Act's definitions.   The Exchange Act lists many financial instruments, including bonds, as securities.  15 U.S.C. § 78c(a)(10).  Accordingly, the offer and sale of the bonds at issue in this case are subject to Exchange Act regulation, especially since Defendants utilized the mails and instrumentalities of interstate commerce to ship the bonds to Von Holtermann.  *See* 15 U.S.C. § 78b(1)(a).  The Court therefore proceeds to analyze Embraceable You's section 10(b) and Rule 10b-5 claim, followed by its section 20(a) claim against Dalton and Bogart.

#### 1.   *Section 10(b) and Rule 10b-5 Claim*

In addition to meeting the statutory definition of a security, Embraceable You must establish that it has standing to bring a section 10(b) and Rule 10b-5 cause of

action.  Section 10(b) and Rule 10b-5 both prohibit fraud "'in connection with the purchase or sale' of securities."  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975) (quoting *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461, 463 (2d Cir. 1952)).  As such, only actual purchasers and sellers of securities have standing to bring private civil suits for damages under section 10(b) and Rule 10b-5.  *Id.* at 731–32.  Since Von Holtermann, as President and CEO of Embraceable You, received the First Fidelity bonds from Dalton as consideration for her business, Embraceable You qualifies as an actual purchaser with standing to bring a section 10(b) and Rule 10b-5 causes of action.  (FAC ¶ 5.)

To state a claim for securities fraud under section 10(b) and Rule 10b-5, a plaintiff must adequately prove the following elements:  (1) misstatement or omission of material fact; (2) scienter, or intent to defraud; (3) reliance; (4) loss causation, i.e., a causal connection between the material misrepresentation and the loss; and (5) resulting damages.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005).  In this case, Embraceable You argues that Dalton and Bogart violated section 10(b) and Rule 10b-5 when they "knowingly made statements and withheld relevant information from [Von Holtermann] in connection with the sale of the Bonds in exchange for Embraceable You's assets."  (Mot. 6–7.)  The Court weighs the sufficiency of the evidence presented for each element of the section 10(b) and Rule 10b-5 claim in turn.

### a. MISSTATEMENT OR OMISSION OF MATERIAL FACT

The first element of a section 10(b) and Rule 10b-5 claim requires a plaintiff to prove that the defendants deceived her by misstating or failing to disclose a material fact.  *Dura Pharm., Inc.*, 544 U.S. at 341; *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 472–74 (1977).  Information is "material" if there is a substantial likelihood that a reasonable investor would consider it useful in making an investment decision.  *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (citing *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

/ / /

1        Embraceable You argues that there were a number of misstatements or

2   omissions of material facts during the offer and sale of the bonds to Von Holtermann.

3   (Mot. 6–7.)  One such misstatement occurred when Dalton and Bogart informed Von

4   Holtermann that she could redeem the bonds prior to maturity.  (SUF 12.)  Dalton and

5   Bogart also failed to reveal that the California Corporations Commissioner had

6   prohibited First Fidelity, Asset Group, Shaw, and Bogart from offering or selling

7   securities in California.  (SUF 3; Mot. 6.)  Furthermore, Dalton and Bogart omitted

8   the fact that the bonds were worthless since First Fidelity was no longer registered in

9   the British Virgin Islands and consequently did not have the ability to issue securities.

10  (SUF 12.)  And lastly, no one told Von Holtermann that Bogart was a convicted felon.

11  (SUF 1.)

12       The Court finds that these facts are material.  Von Holtermann sold

13  Embraceable You to pay for her son's college tuition; therefore, her ability to redeem

14  the bonds before maturity was important in her decision to sell her company.

15  Additionally, a reasonable investor would want to know about a company's financial

16  condition before purchasing any of its securities.  *United States v. Reyes*, 660 F.3d

17  454, 469 (9th Cir. 2011).  Whether a company can issue bonds is an integral part of a

18  company's financial status.  In this case, any investor would want to know about First

19  Fidelity and Asset Group's ability to offer and sell bonds.  And of course, Von

20  Holtermann did not know that Bogart had been convicted of aiding and abetting wire

21  fraud and money laundering.  Any reasonable investor in her position would need that

22  information in order to decide whether to accept First Fidelity bonds.  As a result, the

23  Court finds these misstatements and omissions enough to satisfy the first element of

24  the section 10(b) and Rule 10b-5 claim.

25       **b.  SCIENTER**

26       In addition to a material misstatement or omission, a plaintiff must establish

27  that the defendants acted with scienter.  *Dura Pharm. Inc.*, 544 U.S. at 341.  In other

28  words, the defendants must intentionally or knowingly "induce transactions in a

security by means of false or misleading statements." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197–206 (1976).  Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which was enacted to prevent plaintiffs from asserting baseless securities fraud claims, any allegation of scienter must be more than merely plausible; it must be cogent and compelling.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313–14 (2007).  Specifically, a plaintiff must "[s]pecify each statement alleged to have been misleading, [and the] reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).  This goes hand in hand with Federal Rule of Civil Procedure 9(b), which requires that a plaintiff "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

Embraceable You sets forth enough evidence to establish that Dalton and Bogart acted with scienter.  Embraceable You first submits the Desist and Refrain Order from December 5, 2007, that the California Corporations Commissioner sent to First Fidelity and Asset Group.  (FAC Ex. 1.)  This order, which was also addressed to Bogart and Shaw in their capacity as managers, clearly states that First Fidelity's bonds were not registered and could not be offered or sold in California.  (*Id.*)  Despite this order, Dalton and Bogart still offered the bonds to Von Holtermann in exchange for Embraceable You's assets in 2008.  (Mot. 6–7.)  Embraceable You also provides the Court with records from the British Virgin Islands showing that First Fidelity was not in good standing at the time Von Holtermann sold her company to Dalton.  (FAC Ex. 2–3.)  As such, Dalton and Bogart were on notice that First Fidelity had no power to issue bonds.  (Mot. 6.)  Lastly, Embraceable You proffers Bogart's criminal record and testimony proving Bogart was a felon at the time of the alleged fraud.  (Monroe Decl. ¶¶ 13–14, Ex. F; Walz Decl.)

Since Dalton and Bogart knew these material facts when they induced Von Holtermann to accept the bonds as consideration for her company, Embraceable You has established that these Defendants acted with scienter.

/ / /

9

### c. RELIANCE

Reliance, or "transaction causation," is another necessary element of a section 10(b) and Rule 10b-5 cause of action. *Dura Pharm. Inc.*, 544 U.S. at 341. This means that but for the defendants' material misstatements or omissions, the plaintiff would not have entered into the transaction. *In re Daou Systems, Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005).

Von Holtermann's own declaration proves reliance in this case. Prior to her transaction with Dalton, Von Holtermann had never owned any stocks or bonds. (Von Holtermann Decl. ¶ 5.) As such, she was concerned about accepting the bonds instead of cash, especially since the sale of Embraceable You would go to finance her son's college education. (*Id.*) Because of Dalton and Bogart's assurances that the bonds could be redeemed upon request—even prior to maturity and despite the restrictions on the back of each bond to the contrary—Von Holtermann completed the sale of Embraceable You to Dalton. (*Id.* ¶¶ 5, 8–11.) It is safe to assume that a reasonable investor, especially one with no prior experience in owning and redeeming securities, would rely on someone experienced with bonds. Since Dalton stated that she had held many of these bonds before, Von Holtermann reasonably believed that she could redeem the bonds at any time. (*Id.* ¶ 10.) Dalton and Bogart's representations to Von Holtermann therefore made the sale of Embraceable You possible.

### d. LOSS CAUSATION

Loss causation is the fourth element a plaintiff must prove to prevail on a section 10(b) and Rule 10b-5 claim. *Dura Pharm. Inc.*, 544 U.S. at 341. Loss causation is different from reliance in that it requires the plaintiff to establish that the defendants' misrepresentation or failure to disclose a material fact caused the plaintiff's *economic harm*, as opposed to causing the plaintiff to enter into the transaction itself. *In re Daou Systems, Inc.*, 411 F.3d at 1025.

Dalton and Bogart's misstatements and omissions caused Embraceable You's harm. Because of Dalton and Bogart's representations regarding the redeemability of

the bonds, Von Holtermann sold Embraceable You's business assets in exchange for those bonds.  (Von Holtermann Decl. ¶¶ 5, 8–11.)  Unfortunately for Von Holtermann, the bonds were worthless and failed to serve as adequate compensation for Embraceable You's business assets.  (*Id.* ¶ 24.)  This economic harm to Embraceable You is therefore a direct result of Dalton and Bogart's fraudulent statements.

### e.  DAMAGES

Finally, a plaintiff must establish the damages, or the economic loss, she incurred as a result of the defendants' securities laws violation.  *Dura Pharm. Inc.*, 544 U.S. at 341.  Embraceable You submits that it has lost $174,000, which includes the $150,000 principal amount and $24,000 interest amount due on the bonds.  (FAC ¶ 43; SUF 23.)  This loss—Embraceable You's expectation damages resulting from a business transaction gone awry—would not have occurred had it not been for Dalton and Bogart's fraud.  Embraceable You thus provides support for its damages.

Since Embraceable You successfully proves all five elements of its section 10(b) and Rule 10b-5 claim, the Court **GRANTS** its motion on this claim.

### 2.  *Section 20(a) Claim*

Section 20(a) of the Exchange Act states that "every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person."  15 U.S.C. § 78t(a).  The defendants need not commit the securities violation personally; they merely have to "exercise[] power or control over the primary violator."  *S.E.C. v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).

In this case, Embraceable You asserts that Bogart, as the manager of Asset Group, controlled Dalton and Fashions and directed them to cause "bogus disputes" with Embraceable You.  (FAC ¶¶ 64–66.)  These disputes focused on Dalton's attempt to rescind the sale of Embraceable You due to Von Holtermann's alleged failure of

1    consideration and fraudulent and negligent misrepresentation.  (Von Holtermann Decl.
2    Ex. E 39.)  Because of these issues, First Fidelity denied Embraceable You's request
3    to redeem its bonds, failed to pay the interest due on these bonds, and did not deposit
4    the proceeds from the sale of the bonds and the interest due into an escrow account.
5    (FAC ¶¶ 64–65.)

6          While it is true that Bogart is listed as the manager of Asset Group,
7    Embraceable You provides no evidence that Bogart was a control person under
8    section 20(a).  Bogart's managerial position is not dispositive as to his control over
9    Dalton and Fashions, especially since Dalton was a member of First Fidelity's
10   advisory board and appeared to have some control herself.  *See generally S.E.C. v.*
11   *Todd*, 642 F.3d at 1223 ("The fact that a person is a CEO or other high-ranking officer
12   within a company does not create a presumption that he or she is a 'controlling
13   person.'").  Given the facts at hand, it is more accurate to say that Bogart and Dalton
14   collaborated to perpetrate the fraud on Embraceable You, not that Bogart directed
15   Dalton in this endeavor.

16         Since Embraceable You's argument for Bogart's section 20(a) liability is
17   conclusory and unsupported by any evidence, the Court **DENIES** summary judgment
18   on this claim.

19   **B.     Violations of the California Corporations Code**

20         Like the Exchange Act, California Corporations Code section 25019 includes
21   bonds in its definition of "securities."  Sections 25017(a) and (b) also define the offer
22   or sale of a security as every attempt or agreement to sell a security for value.  Cal.
23   Corp. Code §§ 25017(a)–(b).  As such, the bonds that Dalton gave to Von Holtermann
24   in consideration for Embraceable You qualify as securities that can be regulated in
25   California.  With that established, the Court now examines Embraceable You's
26   California Corporations Code claims.

27   / / /
28   / / /

12

1    *1.    Violation of Section 25130*

2        Embraceable You asserts that Dalton and Bogart violated California

3    Corporations Code section 25130 when the two arranged for Dalton to offer and sell

4    unregistered First Fidelity bonds to Von Holtermann in exchange for the latter's

5    business.  (FAC ¶¶ 73–74, 76–77.)  Under section 25130, "[i]t is unlawful for any

6    person to offer or sell any security in this state in a nonissuer transaction unless it is

7    qualified for such sale under this chapter."  Cal. Corp. Code § 25130.

8        The California Corporations Commissioner's Desist and Refrain Order is prima

9    facie evidence of First Fidelity and Asset Group's offer and sale of bonds without

10   qualification in the state.  Since Dalton and Bogart collaborated to sell unregistered

11   bonds to Von Holtermann, they did so in contravention of section 25130.  The Court

12   thus **GRANTS** summary judgment on Embraceable You's section 25130 claim.

13       *2.    Violation of Section 25401*

14       Embraceable You also alleges that Dalton and Bogart violated California

15   Corporations Code section 25401 when Shaw, Bogart, First Fidelity, and Asset Group

16   "induced, aided, abetted[,] and conspired" with Dalton to misrepresent the nature of

17   the First Fidelity bonds to Von Holtermann.  (FAC ¶ 82.)  Section 25401 prohibits

18   people who offer or sell securities in California from making misleading statements of

19   material fact or omitting such statements.  Cal. Corp. Code § 25401.

20       The Court's analysis here mirrors the above analysis regarding Embraceable

21   You's Exchange Act section 10(b) and Rule 10b-5 claim.  The Court accordingly

22   **GRANTS** Embraceable You's motion in regards to its section 25401 claim.

23   **C.    Common Law Counts for Fraud and Money Owed**

24       Embraceable You's final causes of action against Dalton and Bogart are a

25   common-law fraud claim and a common count for money owed.  (FAC ¶¶ 85–103.)

26   The Court briefly addresses Embraceable You's arguments here.

27   / / /

28

1            *1.      Fraud*

2            To establish a cause of action for fraud, a plaintiff must successfully prove five

3     elements:  (1) misrepresentation in the form of a false statement or omission; (2)

4     knowledge of falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance;

5     and (5) resulting damages.  *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173–74 (2003).

6            Because of the similarity between common law fraud and a section 10(b) and

7     Rule 10b-5 claim, none of these five elements are at issue here.  The Court thereby

8     **GRANTS** Embraceable You's motion on its common-law fraud claim.  Embraceable

9     You's requested damages in this fraud claim are the same as in its securities fraud

10    claim:  $174,000 owed on the bonds sold by Dalton and Bogart to Von Holtermann.

11    (FAC 23.)  While Embraceable You has successfully proven its damages under both

12    federal securities fraud and common law fraud theories, the Court notes that

13    Embraceable You is only entitled to receive one recovery since its injury arises from

14    the same facts.  *Diaz Vicente v. Obenauer*, 736 F. Supp. 679, 696 (E.D. Va. 1990).

15           *2.      Money Owed*

16           Embraceable You's final claim against Dalton and Bogart is a common law

17    count for money owed.  (FAC ¶¶ 101–03.)  The Court is unaware of any such

18    common law count, and Embraceable You's motion fails to cite to any legal authority

19    for its position.

20           In any event, Embraceable You's motion casts this claim largely as one to

21    enforce a state-court arbitration judgment.  Specifically, Embraceable You seeks

22    $174,000 due on the unpaid bonds exchanged for the company's assets (which the

23    Court has already awarded *supra*), $120,358 unpaid on an arbitration judgment

24    affirmed in state court, and $43,786 for Embraceable You's inventory.  (Mot. 8; SUF

25    23.)  Since the arbitration was confirmed in superior court (Von Holtermann Decl. Ex.

26    F) and Embraceable You's federal claims have been disposed of, the Court declines to

27    exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) to enforce the

28    arbitration award, which is only tangentially related to Embraceable You's core claims

1    in this action.  *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) ("A court may decline
2    to exercise supplemental jurisdiction over state-law claims once it has dismissed all
3    claims over which it has original jurisdiction."); *see also San Pedro Hotel Co. v. City*
4    *of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998) (district courts not required to provide
5    explanation when declining jurisdiction under 28 U.S.C. § 1367(c)(3)).

6           The arbitration award did not take into account Embraceable You's inventory,
7    as Embraceable You explains that the arbitrator "did not include the value of the
8    inventory, which Ms. Dalton offered to return."  (SUF 22.)  The arbitration award
9    itself notes that because Dalton agreed to purchase inventory only as needed and then
10   attempted to return it to Von Holtermann after picking it up, Embraceable You was
11   not entitled to these damages.  (Von Holtermann Decl. Ex. E 40.)  The Court agrees
12   with the arbitrator's finding and likewise declines to award damages to Embraceable
13   You for its inventory.
14   / / /
15   / / /
16   / / /
17   / / /
18   / / /
19   / / /
20   / / /
21   / / /
22   / / /
23   / / /
24   / / /
25   / / /
26   / / /
27   / / /
28   / / /

## V.   CONCLUSION

For the above reasons, the Court **GRANTS** Embraceable You's motion with respect to its section 10(b) and Rule 10b-5 claim, as well as its California securities law claims and its common law fraud claim.  The Court **DENIES** Embraceable You's motion in regards to its section 20(a) claim and common count for money owed. Embraceable You is entitled to the **$174,000** it is owed as a result of Dalton and Bogart's common law fraud and federal and state securities law violations. Embraceable You shall submit a proposed judgment consistent with this order no later than **December 10, 2012**.

**IT IS SO ORDERED.**

December 3, 2012

_____

**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**